In the Matter of MOODY & NEWTON, INC., Debtor(s).

MOODY & NEWTON, INC., Plaintiff,

v.

SUN BANK/SUNCOAST, N.A., f/k/a Flagship Bank of Pinellas, N.A., Defendants.

Bankruptcy No. 84–89.
Adv. No. 85–195.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 9, 1987.

David L. Schrader, St. Petersburg, Fla., for plaintiff.

Ginnie Van Kesteren, St. Petersburg, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 adversary proceeding is a Complaint to Recover Set Off filed by Moody & Newton, Inc. (Debtor), the Plaintiff in the above-styled adversary proceeding against Sun Bank/Suncoast, N.A., f/k/a Flagship Bank of Pinellas, N.A. (Sun Bank). The facts relevant to a resolution of the matter under consideration may be summarized as follows:

On September 30, 1983, 105 days prior to the commencement of this Chapter 11 case, the Debtor borrowed $20,000.00 from Sun Bank and executed a 90–day promissory note and a security agreement which pledged all of its contract rights and accounts receivable, whether now owned or hereafter acquired. Subsequently, the Debtor borrowed an additional $10,000.00 from Sun Bank on October 28, 1983 (77 days prior to the filing of the Chapter 11 Petition) and executed a 6–month promissory note and security agreement which granted a lien to Sun Bank on the following vehicles:

| | |
|---|---|
| 1974 Dodge DP Truck | ID#R91H84T002361 |
| 1974 International Truck | ID#10662DCA24886 |
| 1978 Chevrolet Utility Truck | ID#CC0438A166868 |

Both parties stipulated that the security interest covering both obligations was perfected: the security interest created by the security agreement dated September 30, 1983, by the proper recordation of a UCC–1 Financing Statement filed with the Secretary of the State of Florida and the public records of Pinellas County on or about October 5, 1983; the security interest securing the note of $10,000.00 dated October 20, 1983, by duly recorded lien on the title certificates covering the vehicles involved.

On November 14, 1983, the Debtor deposited $81,323.00, which were proceeds from its accounts receivable, in its Sun Bank account. On November 22, 1983, Sun Bank setoff $30,473.42 from the account of the Debtor against the two loans totalling $30,000.00 plus interest. On January 13, 1984, the Debtor filed its Petition for Relief under Chapter 11 of the Bankruptcy Code. On May 31, 1985, the Debtor filed a Complaint to Recover Set Off pursuant to § 553(b) of the Bankruptcy Code. On July 31, 1986, 64 B.R. 211, this Court entered an Order on Motion for Summary Judgment which denied the same and specifically reserved for hearing the issue of the value of

collateral so as to determine the amount of the insufficiency or lack thereof as claimed by the Debtor.

The Debtor seeks to recover from Sun Bank the amount offset to the extent of the insufficiency on the date of such setoff pursuant to § 553(b) of the Bankruptcy Code, which provides as follows:

> [I]f a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of filing the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the latter of—
>
> (A) 90 days before the date of the filing of the petition; and
>
> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

11 U.S.C. § 553(b)(1)(A) and (B). An "insufficiency" means an amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim. In other words, no insufficiency exists if the creditor's claim against the debtor does *not* exceed the debt owing to the creditor by the debtor. In essence, this is an improvement in position test. The Debtor asserts the amount of the insufficiency at the relevant time was $15,331.59. The Debtor arrives at this figure through the following computation. On October 14, 1983 (90 days prior to the filing of the Chapter 11 Petition), the Debtor had a total of $15,141.83 in its Sun Bank accounts. The Debtor then deducted this amount from $30,473.42, the amount of the setoff, and computed an insufficiency in the amount of $15,331.59.

Initially, it must be determined whether or not an insufficiency existed in this case with respect to the Sun Bank loans under § 553(b). Section § 553(b) was derived from § 547, the preference section of the Bankruptcy Code. 4 *Collier on Bankruptcy* ¶ 553.15[2], at 553–19 (15th ed. 1982), *citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 185 (1977) reprinted in U.S.Code Cong. & Admin.News 5787.* In order to determine whether or not Sun Bank improved its position, the Court must first examine the claim held by Sun Bank upon which it based its setoff.

■ It is axiomatic that a fully secured claim cannot form the basis of an insufficiency under § 553(b). Stated differently, only an unsecured claim can be subject to an insufficiency. *In re Union Cartage Co.*, 38 B.R. 134, 138 (Bankr.N.D.Ohio 1984). In order to determine whether Sun Bank was, in fact, fully secured at the relevant time, the value of the collateral must be determined in order to determine the amount of the insufficiency, if any. In sum, whether the November 22, 1983, setoff was an improvement in position or "insufficiency" under § 553(b) depends upon the value of the collateral which secured Sun Bank's loans to the Debtor. The two notes and their respective collateral will be examined in chronological order.

■ As indicated *supra*, the first note was executed on September 30, 1983, and was in the amount of $20,000.00 plus interest. This note was secured by a security agreement which stated "all contract rights and accounts receivable whether now owned or hereafter acquired." From this it follows that the value of the contract rights and the accounts receivable of the Debtor is clearly determinative of the initial question of whether or not Sun Bank was under secured concerning the obligation represented by the $20,000.00 note. Daniel Newton (Newton), Secretary/Treasurer of the Debtor, testified at the final evidentiary hearing on the status of the five construction contracts of the Debtor which were in progress in October 1983. Newton testified that none of the five contracts had any net value to the Debtor and, in fact, all five contracts had a zero or negative value because none of the contracts were completed by the Debtor. Newton's testimony on the five contracts can be summarized as follows:

| | Project Name | Contract Amt. | Change Orders | Total Contract Amt. | Net Amt. |
|---|---|---|---|---|---|
| 1. | Sunset View | $ 80,000.00 | $12,250.00 | $ 92,250.00 | (-)$31,733.80 |
| 2. | Grace | $130,000.00 | $17,750.00 | $147,750.00 | (-)$28,630.48 |
| 3. | McDill | $775,000.00 | None | $775,000.00 | (-)$100,000.00* |
| 4. | Winn Dixie | $ 16,100.00 | $ 2,737.00 | $ 18,837.00 | (-)$11,000.00* |
| 5. | Island Club | $ 76,172.59 | $15,703.41 | $ 91,876.00 | (-)$7,000.00* |

*=approximately

This testimony indicates that no value existed in the aggregate and on an individual contract basis on October 14, 1983. Moreover, Newton testified that the Debtor's contract rights and assets of the Debtor were less than the liabilities during October and November 1983. Thus, the value of the collateral securing the first note was nil at that point; thus, Sun Bank was secured only to the extent of $15,141.83, monies which were on deposit in the Debtor's Sun Bank account on October 14, 1983. Therefore, Sun Bank was unsecured to the extent of the shortfall, to wit, the sum of $4,858.17.

The second note was executed on October 28, 1983, and was in the amount of $10,000.00 plus interest. This note was secured by three trucks described, *supra.* The parties stipulated that the value of the three trucks was in excess of $15,000.00 on October 28, 1983. As a result, Sun Bank was fully secured as to the second note since the collateral was valued in excess of $10,000.00.

One further issue must be addressed by this Court. It must be determined whether or not the second note executed on October 28, 1983, cross-collateralized the first note executed on September 30, 1983. The second note, on its face, fails to clearly and unambiguously denote that the three trucks specifically enumerated in the second note would be cross-collateralized retroactively to the first note. As a result, this Court is satisfied that it cannot be inferred that cross-collateralization was intended in this case. Both notes were clearly separate and distinct obligations owed by the Debtor to Sun Bank.

In sum, Sun Bank was fully secured on the second note for $10,000.00 and secured in the amount of $15,141.83 on the first note for a total secured claim of $25,-141.83. On November 22, 1983, Sun Bank setoff $30,473.42 from the account of the Debtor. The $473.42 represented interest on the two loans which had accrued as of the date of the offset. The computation for the "insufficiency" of Sun Bank is as follows: $30,000.00 (loan amount) minus $25,141.83 (secured claim of Sun Bank) equals $4,858.17 (insufficiency). Therefore, on November 22, 1983, Sun Bank improved its position by $4,858.17 and the Debtor should be granted recovery of the setoff in the amount of $4,858.17 plus interest pursuant to § 553(b) of the Bankruptcy Code.

A separate final judgment will be entered in accordance with the foregoing.