In the Matter of Sheldon Robert MOSES, Debtor.

Sheldon Robert MOSES, Plaintiff,

v.

UNITED STATES DEPARTMENT OF EDUCATION, Defendant.

Bankruptcy No. 86–4895–8B3.
Adv. No. 86–550.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 20, 1988.

Peggy Burke BeVille, Palm Harbor, Fla., for plaintiff.

New York Higher Educ., Frederick J. Schreyer, Albany, N.Y., U.S. Atty.'s Office, Dennis Moore, Tampa, Fla., for defendant.

Deborah P. Rubenstein, Office of Gen. Counsel, U.S. Dept. of Educ., Washington, D.C.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER is before the Court on Motions for Summary Judgment filed by the Plaintiff, Sheldon R. Moses (Debtor) and United States Department of Education (Defendant). The matter involves the application of the Debtor's income tax refund against a defaulted student loan obligation. Certain facts relevant and germane to the motions are undisputed and can be summarized as follows:

On October 1, 1972 the Plaintiff obtained a student loan from Empire National Bank, Spring Valley, New York, and signed a promissory note reflecting the $5,065.20 debt. The loan was guaranteed by the New York Higher Education Assistance Corporation, predecessor to New York Higher Education Services Corporation (NYHESC). The Plaintiff defaulted on the student loan in March, 1975. Empire Bank, as lender, filed a claim with the guarantor, NYHESC, pursuant to the guaranty loan agreement between NYHESC and Empire Bank. NYHESC, in turn, filed a claim with the Defendant, United States Department of Education under its reinsurance agreement and pursuant to Title 20 U.S.C. § 1078(c)[1] which was paid. Thereafter, the Defendant began its collection efforts against the Debtor.

The Debtor was due an income tax refund for the tax year 1985 in the amount of $4,784.81. On September 1, 1986, the Internal Revenue Service applied the Debtor's income tax refund against the defaulted student loan debt owed to the Department of Education, an action authorized by statute. See 26 U.S.C. § 6402(d)[2] and 31 U.S.C. § 3720A[3].

On October 27, 1986, the Debtor filed a Chapter 13 petition. The Defendant, Department of Education, filed a proof of claim on December 5, 1986 listing as unsecured a claim for $573.90. On November 7, 1986 the Debtor filed a two-count Complaint to Avoid Transfer of Property, naming NYHESC as Defendant. The Complaint was amended on August 3, 1987 in order to substitute the Department of Education as Defendant.

Recovery was sought under two alternative Bankruptcy Code sections: (1) setoff, pursuant to Section 553, and (2) preferential transfer pursuant to Section 547. After a pretrial hearing, both the Debtor and Defendant filed a Motion for Summary Judgment. The parties stipulated the income tax refund was applied against the

1. 20 U.S.C. § 1078(c) authorizes the Secretary of the Department of Education to enter into a guaranty agreement with guaranty agencies and to reimburse the agency for losses on the unpaid balance of defaulted student loans. The agency is deemed to have a contractual right against the United States during the life of the loan. This section also provides general reimbursement guidelines.

2. 26 U.S.C. § 6402(d) (Internal Revenue Code) provides that upon receiving notice from any federal agency that a named person owes a past due legally enforceable debt, the Secretary of the Treasury shall reduce the amount of any overpayment (tax refund) to that person by the amount of the debt, pay the amount reduced to the agency and notify the person that the reduction of overpayment was made to satisfy the debt.

3. 31 U.S.C. § 3720A provides specific guidelines for notification of taxpayer of the tax refund reduction and application against the debt.

delinquent student loan on September 1, 1986.

The basic legal issue is whether the Debtor may recover his income tax refund pursuant to either Section 547 or Section 553 of the Bankruptcy Code. Section 547 permits the trustee (or debtor in possession) to avoid a transfer of an interest of the debtor in property to a creditor as a preference.

The Defendant argues that if Section 547 is applicable, the Debtor is not entitled to recover the refund. The Defendant contends it has a statutory lien interest in the refund pursuant to Section 547(c)(6) of the Code. This Section excepts from the trustee's (or debtor) avoiding powers a transfer which creates a statutory lien. The Court finds this argument inapplicable. There is no showing of any statutory lien in issue.

The Defendant presents an alternative argument of setoff, which is proper pursuant to 11 U.S.C. § 553. This Section of the Code recognizes the right of the creditor to setoff a mutual debt owed to the Debtor with certain limitations. The Debtor, on the other hand, challenges the setoff by pleading the Section 553(a)(2) exception, and seeks recovery pursuant to Section 553(b) and Section 522(h).

While both Section 547 and Section 553 appear applicable, only one law controls. It is quite evident Section 553 applies and establishes its own preference criteria.

■ The Bankruptcy Code does not create, but rather, recognizes the right of setoff. *Studley v. Boylston*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1928). Setoff has a similar substantive effect as a preference and is commonly viewed as a type of preference permitted by statute. *In re Hinson*, 65 B.R. 675, 677 (Bankr.W.D.Tenn.1986). Congress sanctioned the exercise of setoff as a permissible preference by enacting Section 553 of the Bankruptcy Code, without which, arguably any attempt

to offset a mutual debt and claim between the estate and a creditor would amount to a preference under Section 547 and would, therefore, be invalid. *In re Lott*, 79 B.R. 869, 870 (Bankr.W.D.Mo.1987); *see generally, In re Fox*, 62 B.R. 432 (Bankr.D.R.I. 1986). Once the right of setoff has been established, Section 547 of the Code cannot be utilized. *In re Brooks*, 70 B.R. 368, 372 (Bankr.E.D.Wis.1987); *Lott*, at 870.

Setoff, which may be exercised either pre-petition or post-petition, is based upon the right of mutual debts. *In re Energy Co.* 32 B.R. 680, 682 (Bankr.N.D.Ill.1983). In order for debts to be mutual, something must be owed by both sides. *In re Sound Emporium* 48 B.R. 1, 3 (Bankr.W.D.Texas 1984). Additionally, both debts must have arisen either pre-petition or post-petition. *In re Energy*, at 682.

Any limitations to setoff within the bankruptcy context are established in Section 553 of the Code. Courts are guided by Sections 553(a) [4] and 553(b) which set forth those circumstances which negate pre-petition setoffs. Section 553(a)(2) prohibits a setoff of a creditor's claim against the debtor where claim was acquired from a third party within 90 days before the case while the debtor was insolvent. The obverse side negates the setoff under 553(a)(3) if debts owed to debtor from creditor were incurred by the creditor for the purpose of obtaining a right of setoff within 90 days of filing the petition while the debtor was insolvent [5]. Section 553(c) creates a presumption the debtor was insolvent during the 90 day period prior to the filing of the petition. It is easily seen that the purpose of Section 553(a)(2) and (a)(3) is to eliminate the creation of a mutual debt pre-petition. [6]

Likewise, Section 553(b) of the Code further limits the right of pre-petition setoff to the account balance (or claim) as it stood at the beginning of the 90–day period, or if later, the first date on which there was an

---

**4.** Section 553(a)(1) which deals with disallowance of claims is not applicable to the facts of this case.

**5.** Section 553(a)(3) contains an "intent" factor as to creditors incurring the debt, e.g., the debt

could have been in the form of a deposit by debtor in a creditor bank.

**6.** Section 553(a)(2)(A) would apply post-petition.

insufficiency.[7] Any difference in the insufficiency or "unsecured"[8] position of the creditor represents an improvement in the creditor's position, and may be recovered by the trustee or debtor under Section 522(h). *See generally, Fox* at 433.

■ The Debtor does not attack the issue of mutuality and the right to offset. Nor does he attack the tax intercept process employed by the Internal Revenue Service and the Defendant. Title 26 U.S.C. § 6402(d) and 31 U.S.C. § 3720A. Instead, the Debtor raises the issue of whether setoff is prohibited under Section 553(a)(2). It is asserted the transfer was made by the Internal Revenue Service to the Defendant 90 days prior to the petition being filed while the Debtor was insolvent. The second issue raised is whether setoff is limited under Section 553(b).

The Debtor has failed to meet his burden of proof under either Section 553(a)(2) or Section 553(b). Section 553(a)(2) focuses on a third party transfer of the claim which occurs after 90 days before the case commences. On this point the Debtor asserts the transfer of the income tax refund by the Internal Revenue Service occurs within the 90 day period. Section 553(a)(2) will only prohibit this setoff if the transfer of the claim from NYHESC to Department of Education was within 90 days prior to filing of petition. The Debtor goes forward by asserting the transfer took place on September 1, 1976 and within the 90 day period. This argument is misplaced. While September 1, 1976, the date of the setoff, would be a critical date under a Section 547 analysis, it is not the relevant date of transfer under a Section 553 analysis. The Debtor does not offer, nor does the record reflect, that the transfer of the claim between NYHESC and the Defendant occurred within the 90 day period. Thus, there is an essential factual issue under Section 553(a)(2) left unresolved.

Could Section 553(a)(3) be effectively applied to deny setoff? The Court finds it cannot. Clearly, the debt owed to Debtor in the nature of a tax refund was not incurred for the purpose of setoff. The debt owed by the government in the form of a tax refund was incurred as a result of the Debtor's tax obligation. Further, there is no showing how the government incurred the debt "for the purpose of obtaining a right of setoff against debtor."

■ Even if setoff were permissible, it could be limited by Section 553(b), "improvement of position" test. The Debtor bases his final argument on this test. He alleges Defendant improved its position over other creditors similarly situated by receiving a lump sum payment in advance. The Debtor compares the amount received by the Defendant to the amount he asserts the Defendant would have received in a Chapter 13 plan distribution or in liquidation. Here, the Debtor misapplies the law. The proper analysis is a comparison of the amount available for setoff 90 days before the case commenced or the first day within this period when an insufficiency (an amount less than the full amount of setoff, § 553(b)(2)) occurs with the amount of insufficiency on day of setoff.

There are, however, cases which hold the improvement of position test should not be applied in all situations. The Third Circuit in *Lee v. Schweiker*, 739 F.2d 870 (3rd Cir.1984) held the test should be applied only in situations which Congress intended for it to apply. *Cresta v. United States*, 58 B.R. 588, 589 (Bankr.E.D.Pa.1986). Indeed, the Defendant relies on the authority of *Lee*. There, the Court stated:

"The concern of Congress in enacting the improvement in position test was that creditors, primarily banks, that had mutual accounts with the debtor would foresee the approach of bankruptcy and scramble to secure a better position for themselves by decreasing the "insuffi-

---

7. Insufficiency is defined in Section 553(b)(2) as the "amount, if any, by which a claim against debtor exceeds a mutual debt owing to debtor by the holder of such claim."

8. Only an unsecured claim can be subject to an insufficiency. *Matter of Moody v. Newton, Inc.,* 71 B.R. 55, 57 (Bankr.M.D.Fl.1987); *In re Union Cartage Co.,* 38 B.R. 134, 138 (Bankr.N.D.Ohio 1984).

ciency," to the detriment of the other creditors. Such a circumstance would not be improbable if banks were allowed to take advantage of any improvement in their position in the 90 days before bankruptcy. A bank with a continuing relationship with the debtor could not only anticipate the bankruptcy filing, but also pressure the debtor to increase its deposits, or reduce its short-term loans to the debtor."

*Lee* at 877.

The Defendant argues the principles applicable to offsets in commercial settings in which the creditor has the discretion to require additional security from the Debtor do not apply to actions by the United States to collect its debts by setoff during the 90 day period against benefits which it is required by law to apply to the debtor.

The Court agrees with the Defendant's argument as to the facts of this case. This Court finds the concern of Congress as to creditors improvement of their position does not apply to this case. Here, the Defendant, as a government agency, is simply exercising its statutory authority. Defendant could not have done anything to increase the amount of the debt or the tax refund in the 90 days before the petition was filed. *See generally, Cresta* at 590. Thus, it could neither increase nor decrease the amount of insufficiency. As such, the Defendant could not have improved its position.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED in that it appears there is only one issue of fact which is controlling in this case, i.e. date of assignment of NYHESC claim to the federal government, the Court orders the United States Department of Education to file a certified copy of the assignment with the Debtor's counsel and this Court within 20 days of the entry of this order. The Court will defer ruling until that time. It is further

ORDERED, ADJUDGED AND DE-CREED the Debtor's Motion for Summary Judgment and the Defendant's Motion for Summary Judgment relative to Section 547 is hereby denied. It is further

ORDERED, ADJUDGED AND DE-CREED the Debtor's Motion for Summary Judgment and Defendant's Motion relative to Section 553 is deferred until the Court can review the assignment between NY-HESC and the Department of Education.